

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS


AUSTIN 11, TEXAS

Honorable Homer D. Eck
Auditor, Fayette County
La Grange, Texas

Dear Sir:

Opinion No. 0-6931
Re: Legality of depositing school
funds in any bank other than
the school depository and
legality of not reporting
income to a State Aid School

Your request for an opinion on the above subject has been received
and carefully considered by this department. We quote below your letter of
November 8, 1945, in full:

"I would like to have your opinion on the following
fact situation:

"School District A. (common school district) of Fayette
County, Texas paid to another District B (Rural High School)
the sum of $260.30 for instructing pupils, also, $45.00 for
high school tuition.

"School District B cashed the two vouchers and deposited to
the credit of the school district in another bank other than
the school depository, to be used by the school. The basis of
handling these sums in this manner is upon a ruling by the
Deputy State Superintendent August 16, 1944, which reads 'I
agree with your action in accepting the contract from the school
districts with less than a fifty cent local maintenance tax.
You will handle this contract locally and use the funds from
the district to take care of the increased cost of operating
your school which cannot be shown in your State Aid Budget.'

"Based upon the fact situation as above, I would like
to have your opinion on the following questions:

"1. Is it legal for the school district to deposit school
funds in any bank other than the school depository?

"2. If question one is answered in the affirmative, then
who would be accountable for the money being spent legally
and to whom would they report same?

"3. Is it legal for a school district not to report all income even though they are State Aid Schools?"

From the contents of your letter we must assume that Fayette County has a duly selected and qualified County depository and except in the instance you mention all the county school funds are deposited therein. We also assume that both the school districts mentioned in your letter are located in Fayette County and levy and collect a maintenance tax for the purpose of supplementing the available school fund received from the State and county. It is our further understanding that the sums you mention, i. e. "$260.30 for instructing pupils" and "$45.00 for high school tuition" were regular school funds to which the common school district was entitled either as a result of taxes it had levied or by reason of accumulated State and County per capita funds on deposit to its credit.

We have reviewed carefully the statutes governing the questions you raised and the law applicable to each. We quote pertinent articles from Revised Civil Statutes of Texas:

Article 2922 (L) (1). Free tuition in certain districts, attendance in high schools in or out of home district -

"Sec. 1. The board of trustees of any common or independent school district, whether organized by General or Special Law, which levies and collects a maintenance tax for the purpose of supplementing the available school fund received from the State and County shall admit into the public schools of the district free of tuition, all persons who are over six (6) and not over twenty-one (21) years old at the beginning of the scholastic year, if such person or his parents or legal guardian reside within said common or independent school district.

"Any pupil between the age of six (6) and twenty-one (21) residing in a rural district or other district, which levies a local maintenance tax, who has been promoted to a high school grade not taught in his home district, shall have the right to attend a standardized, classified, or affiliated high school in his home county or in any other county at the expense of his home school district, if such district as determined by its budgeted expenditures according to the General Budget Law is financially able to provide tuition, or otherwise at the expense of the State of Texas.

"If the name of such pupil appears on the census roll of his home district and if the pupil attends a high school in the county of his residence, his State and county per capita funds shall be transferred to the receiving district under the General Law governing the transfer of pupils. . . .

"Sec. 2. The superintendent of the receiving district,

the county superintendent, and the superintendent or principal
of the sending district shall certify, not later than thirty
(30) days after notification of the entrance of each pupil
in the receiving high school, the eligibility of pupils from
the sending districts for tuition privileges in the high schools
of the receiving district which said pupils desire to attend
by supplying such information and signing such forms as may be
required by the State Department of Education. Upon the
approval of this certificate by the county superintendent, the
State and district shall be obligated for the payment of the
tuition. The county superintendent is hereby required to file
with the State Department of Education a copy of the budget,
made under the General Budget Law of the State, not later than
October 1st, of each year of each of the several districts in
his county and to furnish such other information as will enable
the State Department of Education to estimate the amount of
high school tuition that each district will be able to pay;
provided, however, that no portion of the State and county
available funds of such district of those children not
transferred for high school purposes shall ever be used for the
payment of the high school tuition due other districts except
as provided by the General Laws; provided further, that the
superintendents of sending independent school districts shall
sign a certificate of eligibility, which certificate shall obligate
the district and the State for the payment of such tuition at
the rate as hereinbefore provided; provided further, that the
superintendent of each sending independent district is hereby
required to file with the State Department of Education a copy
of the budget of his district not later than October 1st,
of each school year and to furnish such other information as
will enable the State Department of Education to estimate the
amount of high school tuition that the district will be able
to pay; provided further, that no child entitled to free high
school privileges under the provisions of this Act shall ever
have such privileges curtailed, or his tuition account invalidated.
This shall not be construed, however, to limit except as to high
school tuition, the regulations of the State Department of
Education relative to other provisions of the present Rural Aid
Law, or such other laws for the equalization of educational
opportunities as may be enacted.

"Sec. 3. Receiving high school districts shall make a
report to the State Department of Education and the county
superintendent at the close of each semester, giving the
name of the county, of the home district, and of the child,
with his age, grade, and attendance, and the rate and amount
of tuition. In addition to this report an itemized statement
indicating tuition due to date shall be sent at the close
of each semester to the secretary of the board of trustees of
the sending district. Upon the basis of the attendance report,

referred to in this Section, when approved by the State Department of Education, warrants shall be issued semi-annually by the State directly to the receiving high school district for payment of the tuition due; provided, however, each home district indebted to a high school district for tuition shall issue a warrant to the high school district not later than June 15th, of each fiscal year for all of its surplus maintenance funds, or as much thereof as may be necessary to pay the entire tuition account of such home district to the receiving high school, and the superintendent of the receiving high school shall not later than July 1st, of each year certify to the State Department of Education the amount received by the school on high school tuition from each sending district. The amount paid by the sending district shall be deducted from the second semi-annual payment made by the State to the receiving school, provided that any high school district receiving from the State Department an amount in excess of the total tuition charged by the receiving district shall be required under this Act to return all excess payment to the State Department of Education to be deposited with the State Treasurer to the credit of the fund from which it came.

"Sec. 4. The State Superintendent shall withhold any and all funds due any district that refuses or fails to execute forms required by the State Department of Education for pupils eligible to have their high school tuition paid by the home district and the State. It is further provided that the State per capita available fund for each pupil transferred for high school purposes under this Act, who has enrolled in the school to which he has been transferred, shall be distributed to the districts to which such pupils have been transferred as the apportionment is paid by the State. If any district fails to pay this portion of the State per capita according to the provisions of this Act, then the State Superintendent, when notified by the superintendent of the receiving districts, accompanied by an affidavit of such failure, shall withhold from such district, when the next per capita payment is ready for distribution, such an amount as such district may owe any other district until such obligation has been paid; provided further, that the State Superintendent shall investigate such accounts and determine that they are just accounts and obligations of the district before their portion of the per capita allotment is withheld."

Art. 2922i. Warrants –

"All funds of every nature to which a rural high
school district may be entitled shall be paid out on
warrants issued by the secretary and signed by the
secretary and president of the board of trustees and
approved by the county superintendent of public instruction.
The board of school trustees shall select its own president
and secretary, each of whom shall be a member of the board.
The secretary shall keep a complete itemized account of
all receipts and disbursements in a well-bound book owned
and paid for by the district, and his account shall be
approved by the county superintendent and by the county
board of school trustees at the end of each scholastic
year. No school funds shall be allotted or apportioned
and paid to any rural high school district for the
following year thereafter until this report is submitted
to and approved by the county superintendent and the county
board of school trustees."

Art. 2922j - Deposit and disbursement of funds.

"All funds belonging to a rural high school district
shall be deposited in the county depository and disbursed
in the same manner as other funds are disbursed from such
depository under the depository law in so far as same are
applicable.

Art. 2922k. Control by and of trustees-

"All rural high schools within a rural high school
district herein provided for shall be under the immediate
control of the board of school trustees for such rural high
schools, and such board of school trustees shall be under
the control and supervision of the county superintendent and
county board of school trustees, and shall be subject to the
same provisions of law and restrictions that common school
districts are now subject to, except where otherwise provided
herein."

Art. 2549. Designating depository -

"As soon as said bond be given and approved by the
Commissioners' Court, and the Comptroller, an order shall
be made and entered upon the minutes of said Court desig-
nating such banking corporation, association, or individual
banker, as a depository of the funds of said county until
sixty days after the time fixed for the next selection of
a depository; and, thereupon, it shall be the duty of the
county treasurer of said county, immediately upon the
making of such order, to transfer to said depository all
the funds belonging to said county, as well as all funds
belonging to any district or other municipal subdivision
thereof not selecting its own depository, and immediately
upon receipt of any money thereafter, to deposit the same

with said depository to the credit of said county, district and municipalities; and, for each and every failure to make such deposit, the county treasurer shall be liable to said depository for ten per cent upon the amount not so deposited, to be recovered by civil action against such treasurer and the sureties on his official bond in any court of competent jurisdiction in the county. It shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the State and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected, pending the preparation of his report of such collections and settlement thereon, which shall bear interest on daily balances at the rate, if any, fixed for such deposits of the tax collector by the Commissioners' Court in its order designating such depository or depositories, and the interest accruing thereon shall be apportioned by the tax collector to the various funds earning the same. The bond of such county depository or depositories shall stand as security for all such funds. If the tax collector of such county shall fail or refuse to deposit tax money collected as herein required, he shall be liable to such depository or depositories for ten per cent upon the amount not so deposited and shall in addition be liable to the State and county and its various districts and other municipal subdivisions for all sums which would have been earned had this provision been complied with, which interest may be recovered in a suit by the State. Upon such funds being deposited as herein required, the tax collector and sureties on his bonds shall thereafter be relieved of responsibility for its safe-keeping. All money subject to the control of the county treasurer or payable on his order, belonging to districts or other municipal subdivisions selecting no depository, are hereby declared to 'county funds' within the meaning of this chapter and shall be deposited in accordance with its requirements and shall be considered in fixing the amount of the bond of such depository."

We must therefore answer your first question negatively. Fayette County having previously duly selected a county depository, Art. 2549, as quoted above, makes it mandatory that all money held for the school districts be deposited with the duly designated depository."

Since we have given a negative answer to your first question, we deem a specific answer to your second question is not necessary.

We also answer your third question negatively and cite Art. 2922(L), Sec. 1, 2, 3 and 4 as quoted above. Your particular attention is called to the following language used in Article 2922L, Section 3: "And the superintendent of the receiving high school shall not later than July 1st, of each year certify to the State Department of Education the amount received by the school on high school tuition from each sending district."

We refer further to S. B. 167, 49th Legislature, Regular Session and quote below Article II Section 1 of said bill as it appears on page 642 of Vol. 5, Vernon's Texas Session Law Service:

"Article II, THE APPLICATION FOR STATE AID."

Section 1. The trustees of the districts authorized to apply for aid under the provisions of this Act shall send to the State Superintendent of Public Instruction on forms provided by said Authority, which forms have been approved by the Legislative Accountant, all information that may be required. Said forms will include a budget by which the amount of Salary Aid to which a school will be eligible shall be determined. The receipts as shown in said budget will include the state and county available and local maintenance balances brought forward from the preceding year, state and county available and local maintenance receipts for the current year, tuition to be collected locally, and miscellaneous receipts. The expenditure will include salaries of teachers as determined by the salary schedule stated herein, and a maximum of Two Hundred Ten Dollars ($210.00) per teacher per year in accredited schools and One Hundred Ninety Dollars ($190.00) per teacher per year in unaccredited schools for other current expenses; provided that if for either year of the biennium the Salary Aid Allocation shall be insufficient to guarantee the said Two Hundred Ten Dollars ($210.00) and One Hundred Ninety Dollars ($190.00) for current operating expenses, the State Superintendent, with the approval of the Legislative Accountant, is empowered to reduce all grants for that purpose proportionately. The total amount of approved expenditures less the total amount of receipts will be the amount of Salary Aid to which a school will be eligible; provided in no case will such amount exceed the approved amount of teachers' salaries. The State Superintendent shall, subject to the provisions of this Act, upon approval of the Legislative Accountant grant to the school an amount of aid as will, with state and county available funds, together with all other funds including tuition, maintain the school for such a period and in such a manner as authorized in this Act; provided that school districts qualifying for salary aid under the provisions of this Act may use this aid either to maintain a school in the home district or to provide school facilities for the bona fide scholastics of the districts in some other school of higher rank. The applications shall be sworn to by the county superintendent of all Common school Districts and president and secretary of the board of trustees of all Independent School districts applying for aid. School districts accepting aid under the provisions of this Act shall share in the distribution of state and county available school funds and in all other funds as herein may be provided. (Underscoring ours)

We trust the above satisfactorily answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ E. M. DeGeurin
     E. M. DeGeurin
       Assistant

EMD:bt-ds

APPROVED NOV. 23, 1945

/s/ Carlos C. Ashley

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY /s/ B.W.B.
CHAIRMAN